### LEVY v. WEIDHORN et al.

(District Court, D. Massachusetts. March 23, 1923.)

#### No. 1006.

1. **Fraudulent conveyances ⬡115(1)—Mere preference to creditor is not fraudulent.**

    The payment or securing of a debt which is really owed, although involving all the assets of the debtor and being in the highest degree preferential, was good at common law, and is not a "fraudulent conveyance" under the statute of Elizabeth; the essence of a fraudulent conveyance being that somebody shall have been defrauded by it, generally with some benefit to the maker of the conveyance.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fraudulent Conveyance.]

2. **Fraudulent conveyances ⬡122(2)—Mortgages of entire stock in trade held not fraudulent.**

    Mortgages executed by a merchant, who subsequently became bankrupt more than four months after executing them, which covered his entire stock in trade and fixtures, and which were intended to secure an indebtedness he owed to the mortgagee, his brother, for an amount largely in excess of the value of the property transferred, are not fraudulent conveyances, though thereafter the mortgagor purchased a large amount of goods on credit, and his creditors received nothing on their claims because of the mortgage of which they were charged with notice.

3. **Fraudulent conveyances ⬡86—Past debt is consideration for conveyance.**

    A past debt is a consideration for a conveyance, both at common law and under the statute of Elizabeth, prohibiting fraudulent conveyances.

In Equity. Suit by Benjamin A. Levy, as trustee in bankruptcy, against Leo Weidhorn and others, to set aside a mortgage as having been made to hinder and defraud creditors. Decree directed dismissing the bill.

Friedman & Atherton and A. Morris Crosby, all of Boston, Mass., for plaintiff.

Gaston, Snow, Saltonstall & Hunt and Henry Endicott, all of Boston, Mass., for defendant Boston Storage Warehouse Co.

William M. Blatt, of Boston, Mass., for defendant Weidhorn.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MORTON, District Judge. The essential facts are clear. The bankrupt and Leo Weidhorn, who is the defendant and mortgagee, are brothers and appear to have been on unusually intimate terms. The bankrupt began business in a small way in 1906 with capital borrowed from Leo. Two years later he mortgaged to Leo all his stock in trade and fixtures. That mortgage was discharged after having been in force about six months. The business appears to have been moderately successful until 1914, when, perhaps because of the disturbance of business conditions caused by the war, it went down hill. In February, 1915, the bankrupt, according to the testimony, owed Leo about $9,000, and other creditors about $1,600, including the landlord, whose claim for rent amounted to between $700 and $800. Under date of February 3, 1915, the bankrupt made to Leo the first of the mortgages here in question; it was recorded the next day. It attracted the attention of his principal merchandise creditors, and two of them testified that in answer to inquiries by them the bankrupt stated that the mortgage was put on only as a protection against the landlord, with whom he was having trouble over the rent, and that he owed only a small amount. Inasmuch, however, as it pretty clearly appears—and, indeed, is so assumed by the plaintiff—that the bankrupt was at that time indebted to Leo as above stated, his statements, if he made them, were not true. The mortgage did not cover after-acquired property.

After having been dispossessed of his shop in Boston, the bankrupt went to Manchester, N. H., and opened one there. Leo appears to have supplied the funds required for the removal. In the autumn the bankrupt returned to Boston and opened a shop on Washington street, to which he brought his stock in trade from Manchester. Shortly before Christmas he opened another shop on the same street.

On October 5, 1915, the bankrupt made a second mortgage of his stock in trade and fixtures to his brother. It was in substantially the same terms as the former one, except that it covered after-acquired property. His indebtedness to Leo had increased during the interval and was at this time over $10,000. This mortgage also was promptly recorded on the same day, and all persons who dealt with him were put upon notice of the lien which it created. Just what the bankrupt's indebtedness was at this time is not clear, but I infer that it had not much increased to other persons than Leo up to this date. In October, November, and the first part of December, however, the bankrupt made large purchases on credit, so that by the first of the year he owed merchandise creditors over $7,000. The Christmas trade was unsatisfactory and after Christmas the business practically collapsed. The bankrupt was absent—he says because of ill health—during the entire month of January, 1916, and the shop was carried on under Leo's supervision.

On February 12, 1916, Leo gave notice of foreclosure, and on February 21st the foreclosure sale took place. No real effort was made to interest purchasers; it was at best a mere formality, and Leo bought in the mortgaged property. By that time the bankrupt had returned, and he assisted in packing the goods and removing them to the storage warehouse, where they were stored in Leo's name. On February 26th

the voluntary petition in bankruptcy was filed, Leo furnishing the money necessary for expenses.

[1] The bankruptcy did not occur within four months of the October mortgage, and not for more than a year after the earlier one. Neither mortgage is open to attack as a preference. The present suit seeks to set aside both as having been made to hinder and defraud creditors. The principles of law by which the matter is to be determined are well settled. The essence of a fraudulent conveyance is that somebody shall have been defrauded by it. Generally there is some benefit to the maker, some secret understanding that the property is to be held for his account, or some gain which he is to receive in return for the conveyance. The payment or securing of a debt which is really owed, although involving all the assets of the debtor and being in the highest degree preferential, was good at common law and is not a fraudulent conveyance under the statute of Elizabeth. Every preferential conveyance, if it matures, injures other creditors; that it have that result is indeed one of the essentials of a preference under the Bankruptcy Act (Comp. St. §§ 9585–9656). Knowledge and intent that such will be the effect would almost always be within the purview of the parties to it, but they do not constitute "intent to hinder, delay, or defraud creditors" under the statute of Elizabeth. Of course, a preferential transfer may have a double aspect, and be made, not only for the purpose of securing or paying the transfer, but also of putting the balance of the property transferred out of the reach of other creditors. This would usually, perhaps always, imply the transfer of more property than required to satisfy the demands of the transferee.

[2] At the time of the February mortgage, the bankrupt's stock in trade and fixtures were worth about $5,000; his total liabilities, in addition to his indebtedness to Leo, were, as I have said, not over $1,600 or $1,700. No creditor, except the landlord, seems to have been pressing him. His brother had for years stood behind him and assisted him. It was natural that the bankrupt should wish to secure him, and it is reasonable to believe that the mortgage was given for that purpose, as the bankrupt and his brother testify. As the bankrupt owed Leo almost twice the value of the mortgaged property, it does not seem to have been a fraudulent conveyance, although it was undoubtedly a preferential one.

The October mortgage appears to have been regarded, as counsel for the plaintiff suggests, as in effect a continuance of the February transaction. The bankrupt moved to Boston from Manchester early in October, and opened his new store there on October 7th. This mortgage was given two days before, and was probably intended to continue the security which Leo already held, increased by the lien on after-acquired property given by it. It seems to be connected with the new venture which the bankrupt was undertaking. It does not appear that he was then being pressed by his creditors; the landlord's claim on which a warrant of arrest had been issued had been adjusted; and both the bankrupt and Leo, who I have no doubt was fully in his confidence, seem to have been contemplating an extension of the business. It is not shown that the mortgage was part of a conspiracy to

obtain goods without paying for them, and the value of the mortgaged property was still much below the amount of Leo's claim.

[3] Under such circumstances, the mortgage was not, it seems to me, a fraudulent conveyance. Both mortgages could have been upset by the other creditors, if they had exercised the requisite diligence. Their failure to do so, with the result that a single creditor gets the entire estate and the rest get nothing, does not convert this preferential conveyance into a fraudulent one. In Rolfe, Adm'x, v. Clarke, 224 Mass. 407, 113 N. E. 182, relied on by the plaintiff, the conveyance was upheld to the extent that consideration was given for it, and, of course, a past debt is consideration at common law and under the statute of Elizabeth.

Decree dismissing bill, with costs.